IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Cheryl J. Raines, ) | |
| ) | Civil Action No. 6:06-2619-TLW-WMC |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Michael J. Astrue, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act.

**ADMINISTRATIVE PROCEEDINGS**

The plaintiff protectively filed applications for disability insurance benefits (DIB) and supplemental security income (SSI) benefits on December 5, 2003, alleging that she became unable to work on January 1, 2001 (amended at the hearing to October 31, 2003). The applications were denied initially and on reconsideration by the Social Security

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

Administration.   On September 9, 2004, the plaintiff requested a hearing.   The administrative law judge, before whom the plaintiff and her attorney appeared on September 9, 2005, considered the case *de novo*, and on March 11, 2006, found that the plaintiff was not under a disability as defined in the Social Security Act, as amended. The administrative law judge's finding became the final decision of the Commissioner of Social Security when it was approved by the Appeals Council on August 30, 2006. The plaintiff then filed this action for judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the administrative law judge:

> (1)   The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through the date of this decision.
>
> (2)   The claimant has not engaged in substantial gainful activity since October 31, 2003, the amended alleged onset of disability.
>
> (3)   The claimant's diabetes, arthritis, degenerative joint disease, depression, and osteoarthritis are considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(c).
>
> (4)   These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
>
> (5)   The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.
>
> (6)   The claimant has the residual functional capacity for sedentary exertion.
>
> (7)   The claimant's past relevant work as a payroll clerk did not require the performance of work-related activities precluded by her residual functional capacity (20 CFR § 404.1565).

(8) The claimant's medically determinable impairments do not prevent the claimant from performing her past relevant work.

(9) On October 31, 2003, the claimant was closely approaching advanced age.

(10) The claimant has a semi-skilled work background.

(11) The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR § 404.1520(0).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## APPLICABLE LAW

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing

3

substantial gainful employment. 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. §404.1503(a). *Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as :

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a

4

>   preponderance. If there is evidence to justify a refusal to direct
>   a verdict were the case before a jury, then there is "substantial
>   evidence."

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## EVIDENCE PRESENTED

The record reveals that the plaintiff was 54 years old as of the ALJ's decision (Tr. 69). She has more than a high school education, and past relevant work as a weaver and payroll clerk (Tr. 122-29, 237).

Beginning in 1994, Dr. Bruce Wellmon, a podiatrist, treated the plaintiff for left heel spurs and tendinitis (Tr. 165-75). From June 2001 to December 2002, Dr. Randall Moss also treated the plaintiff for complaints of heel pain, for which he prescribed Vioxx (Tr. 143-62).

The plaintiff sought emergency room treatment for left heel pain in November 2002 (Tr. 134-42), and Dr. Wellmon performed left heel surgery in December 2002 (Tr. 163-64).

On March 3, 2004, the plaintiff presented for consultative evaluation with Dr. Ira Gordon Early, Jr., in connection with her applications for benefits. Dr. Early noted that the plaintiff was applying for disability primarily due to memory problems, and that she "worked in textiles up until October of 2003 . . . [when] . . . [s]he was released . . . for excessive loss of work time. Evidently, the workplace was not complaining about her memory." Tests showed that the plaintiff's short-term recall was initially 0 of 3 after three

minutes and 2 of 3 after "prodding," and that her long-term memory was intact. She had moderate depression, a flat affect, and good judgment on mental status examination. Dr. Early noted that the plaintiff also complained of pain in her knees, hands, and feet that "bothers her on a daily basis and it impairs her when doing crawling, lifting, and bending type activities. She is still able to do housework." Physical examination showed the plaintiff was neurologically intact and had "very little synovial inflammation"; somewhat reduced range of motion in the knees with a "visible valgus deformity" in the left knee; and full range of motion in the hands, elbows and shoulders. She was able to bend and touch her mid-tibia and squat to 60 degrees. Dr. Early diagnosed arthritis in the knees, mild and "age appropriate" arthritis in her hands, and [i]mpairment informing short-term memory. This may be an early dementia. She certainly does not look demented . . . or have appearance of dementia. I certainly think that she needs to get this evaluated. It is not at [maximum medical improvement]. It could be pseudodementia from depression. She does not look that depressed. I would not consider her competent. I think psychological evaluation would be helpful (Tr. 179-82).

On March 16, 2004, a State agency psychologist reviewed the evidence and found that the plaintiff did not have any severe[2] mental impairments. A State agency physician reviewed the evidence and completed a physical residual functional capacity assessment, finding that the plaintiff could lift/carry 50 pounds occasionally and 25 pounds frequently; stand/walk or sit about six hours each in an eight-hour workday; frequently balance and stoop; and occasionally climb, kneel, crouch and crawl, despite her severe musculoskeletal impairments (Tr. 183-91).

---

[2]An impairment is severe when it is more than a slight abnormality that has more than a minimal effect on the ability to do basic work activities. *See* Social Security Ruling (SSR) 96-3p; 20 C.F.R. §§ 404.1520(a), 404.1521; *see also, e.g., Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984) (citations and internal punctuation omitted).

On May 3, 2004, the plaintiff presented to James N. Ruffing, Psy.D., for psychological evaluation in connection with her applications for benefits. Dr. Ruffing noted that the plaintiff "lost her job" in October 2003 due to downsizing, and that she was responsible for getting her children off to school, and taking care of activities around the house, such as clothing and cooking at times. He noted that she did take care of her personal needs and could drive a car if someone was with her. She was able to go to church about once a month, and could go shopping if her list was written. She participated in some meal preparation, cleaning, and laundry activities. On examination, the plaintiff was fully oriented and had spontaneous and responsive speech, intact thought processes, normal cognitive processing speed, fairly appropriate affect, generally euthymic mood, and no suicidal thoughts. She said she had received mental health treatment once in the past and did not currently feel depressed. Dr. Ruffing found that

> [o]bjective memory assessment did not find for a memory disorder. She may have a very mild low-grade depression. . . . She was able to attend and focus fairly well and demonstrated fairly good emotional stability. She seems able to maintain socially appropriate and predictable behavior and seems to have the capacity to perform repetitive if not varied tasks. She seems able to understand, remember, and carry out detailed instructions. If awarded funds, she would seem to have the capacity to manage finances appropriately

(Tr. 192-94).

On May 10, 2004, a State agency psychologist reviewed the evidence and completed a psychiatric review technique form, finding the plaintiff had "mild" restrictions in activities of daily living; "mild" difficulties maintaining social functioning; "mild" difficulties maintaining concentration, persistence or pace; and no extended episodes of decompensation (Tr. 195-208).

7

In August 2004, State agency medical consultants found that the plaintiff's musculoskeletal impairments were severe, and that she did not have any severe mental impairments (Tr. 221).

On February 4, 2005, the plaintiff complained of arthritis and diabetes and said she could no longer afford medications. Dr. Moss provided medication samples and prescriptions (Tr. 211).

On March 29, 2005, Dr. Moss indicated that he had treated the plaintiff for diabetes, arthritis and degenerative joint disease, heel spurs, severe arthritis in her hand, depression, high cholesterol, and right knee arthroscopy. He noted that the plaintiff's conditions were "moderately severe" and that her diabetes was poorly controlled. He found she could lift five pounds occasionally and less than five pounds frequently; sit less than four hours; stand/walk one hour; and that she needed to change positions frequently. He also found that climbing, bending, stooping, squatting, pushing and pulling would worsen her pain, that she had limited grip and manipulative abilities, and that she should not engage in repetitive or continuous movements. He found that the plaintiff's pain would interfere with her concentration and work pace and require unpredictable breaks. He concluded, "[Plaintiff's] conditions and limitations have persisted for many years and are not likely to improve. This [patient's] prognosis for return to work are poor. Finances have been a real problem for purchase of medications for this patient" (Tr. 209-10).

On May 30, 2005, the plaintiff presented for consultative evaluation with Dr. Husam Mourtada in connection with her applications for benefits. The plaintiff told Dr. Mourtada she had non-insulin dependent diabetes since 2002, controlled with medication. She said she had joint pain and low back pain that was "[b]etter when she uses medication like Goody powder." She also complained of shortness of breath, memory problems and decreased vision. On examination, the plaintiff had clear lungs, 20/30 visual acuity on the left and 20/25 on the right, full muscle strength in all extremity muscle groups, normal deep

tendon reflexes, negative straight-leg-raise tests, no focal or sensory neurological deficits, and no joint deformities. She had crepitus and patellar tendon pressure and tenderness in both knees, but no erythema or edema in either knee; near normal range of motion in the cervical spine; somewhat reduced range of motion in the lumbar spine; and normal range of motion in the shoulders, elbows, knees, wrists, hips and ankles. She had an antalgic gait but was able to walk without an assistive device. She was able to remember three objects after five to 10 minutes. Dr. Mourtada found the plaintiff had osteoarthritis in her knees and probably in her back, decreased memory, chest pain and shortness of breath, decreased vision, and some depression. He recommended cardiological and pulmonary work-up for chest pain and shortness of breath, and further work-up for her low back pain (although it appeared to be mechanical in origin) (Tr. 212-14).

Dr. Mourtada also completed a medical source statement and found that the plaintiff could lift 10 pounds frequently; stand less than two hours in an eight-hour workday; sit about six hours in an eight-hour workday; and occasionally climb, balance, kneel, crouch, crawl, and stoop; and that she had limited ability to push/pull with her extremities secondary to joint pain (Tr. 215-18).

On January 23, 2004, the plaintiff completed a Daily Activities Questionnaire, in which she stated she could wash dishes daily, do laundry weekly, watch movies, drive if someone went with her or she wrote down where she was going, and prepare meals if she did not get distracted. She said she could not perform work on her knees or stand for long periods, that she did not socialize, and that she needed help with her medications due to memory problems (Tr. 101-04).

On February 9, 2004, the plaintiff indicated she had low energy and constant pain in her hands and knees, and that she sometimes used a cane. She said she could stand about 20 minutes, slowly climb a few stairs, get her son up for school, prepare meals, wash dishes, perform light housework, and drive if someone went with her. She said she

could use her hands to hold a glass and silverware, type on a computer, and open a door, and that she had difficulty with buttoning, zipping, and tying and could not open a jar. She said she visited her sister-in-law once or twice a month, and that she had not left the house by herself in six months (Tr. 105-07).

On August 19, 2005, the plaintiff's attorney deposed Benson Hecker, Ph.D., a vocational expert. Dr. Hecker testified that the plaintiff had past work as a weaver (semi-skilled and light) and payroll clerk (low semi-skilled and sedentary). He further testified that someone with the limitations assessed by Dr. Mourtada plus limited grip and manipulative abilities, a need to change positions every five to 10 minutes, and pain with "all of the usual range of motion activities," could not work. He testified that someone with limitations from pain as assessed by Dr. Moss could not work, and that Dr. Mourtada's assessment did not address concentration and pace issues that would be associated with her alleged level of pain (Tr. 77-94).

## **ANALYSIS**

The plaintiff argues that the ALJ erred by (1) failing to properly consider the opinion of plaintiff's treating physician; (2) failing to properly consider the vocational impact of the plaintiff's pain and other non-exertional impairments on her ability to work at an occupation for eight hours a day/five days a week; (3) finding that the plaintiff could perform sedentary work as well as her past relevant work; and (4) disregarding the opinion of vocational expert Benson Hecker, Ph.D.

***Treating Physician***

The opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case. *See* 20 C.F.R. §416.927(d)(2)

(2006); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). However, statements that a patient is "disabled" or "unable to work" or meets the Listing requirements or similar statements are not medical opinions. These are administrative findings reserved for the Commissioner's determination. SSR 96-2p. Furthermore, even if the plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

The regulations provide that even if an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he still must consider the weight given to the physician's opinion by applying five factors: (1) the length of the treatment relationship and the frequency of the examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. §404.1527(d)(2)-(5). Social Security Ruling 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion. SSR 96-2p, 1996 WL 374188, *5. As stated in Social Security Ruling 96-2p:

> A finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927. In many cases, a treating source's opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

*Id.* 1996 WL 374188, *4.

The plaintiff argues that the ALJ did not properly consider her treating physician's medical opinion. This court agrees. Dr. Moss has been the plaintiff's treating physician since September 1997. He saw the plaintiff on February 4, 2005, a few weeks before he completed interrogatories regarding her disability claim (Tr. 209-210).

Dr. Moss completed interrogatories on the plaintiff's condition on March 29, 2005. As set forth above, he noted that the plaintiff's conditions were "moderately severe" and that her diabetes was poorly controlled. He found she could lift five pounds occasionally and less than five pounds frequently; sit less than four hours; stand/walk one hour; and needed to change positions frequently. He also found that climbing, bending, stooping, squatting, pushing and pulling would worsen her pain; that she had limited grip and manipulative abilities; and that she should not engage in repetitive or continuous movements. He found that the plaintiff's pain would interfere with her concentration and work pace and require unpredictable breaks. He concluded, "[Plaintiff's] conditions and limitations have persisted for many years and are not likely to improve. This [patient's] prognosis for return to work are poor. Finances have been a real problem for purchase of medications for this patient" (Tr. 209-10).

The ALJ found that Dr. Moss' treatment notes did not sustain his responses to the interrogatories and thus concluded that Dr. Moss' statements were an accommodation to the plaintiff and were not given "great weight." As argued by the plaintiff, the other medical treatment described by the ALJ in the decision does not persuasively contradict Dr. Moss' opinion. Dr. Early, who saw the plaintiff one time, noted that she has moderate arthritis in the hands and severe arthritis in the right and left medial knee (Tr. 182). He does not reference her heel spurs in his report. Dr. Early further stated that the plaintiff may have pseudodementia from depression and that he "would not consider her competent" (Tr. 180). Dr. Mourtada also saw the plaintiff on one occasion (Tr. 212-214). In his Medical Source Statement of Ability to Do Work-Related Activities, Dr. Mourtada that

12

the plaintiff could stand and/or walk less than 2 hours in an 8-hour workday (Tr. 215), which supports Dr. Moss' assessment that the plaintiff could stand and/or walk one hour in an eight-hour workday.

Based upon the foregoing, the ALJ's finding that the plaintiff could stand and/or walk "about two hours in a workday" (Tr. 20) is not supported by substantial evidence. Upon remand, the ALJ should be instructed to evaluate the opinion of the plaintiff's treating physician in accordance with the above-cited law. If the ALJ finds that the opinion is not entitled to controlling weight, he should still consider the weight to be given to the physician's opinion by applying the factors cited above.

*Credibility*

The plaintiff next argues that the ALJ failed to properly consider her allegations of pain. A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. §§404.1529(c)(4) and 416.929(c)(4). Furthermore, "a formalistic factor-by-factor recitation of the evidence" is unnecessary as long as the ALJ "sets forth the specific evidence [he] relies on in evaluating the claimant's credibility." *White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001). Social Security Ruling 96-7p states that the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." Furthermore, it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight." SSR 96-7p, 1996 WL 374186, *4.

In addition to the objective medical evidence, the factors to be considered by an ALJ when assessing the credibility of an individual's statements include the following:

(1)    the individual's daily activities;

>   (2)   the location, duration, frequency, and intensity of the individual's pain or other symptoms;
>
>   (3)   factors that precipitate and aggravate the symptoms;
>
>   (4)   the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
>
>   (5)   treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
>   (6)   any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
>   (7)   any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186, *3.

The ALJ found the plaintiff's testimony "not entirely credible" (Tr. 22-23). In support of this finding, the ALJ focused on the following:

>   (1)   The claimant's responses in a Daily Activities Questionnaire stating that she does not have problems doing housework with others, washing dishes daily, doing laundry weekly, and preparing meals as long as she does not get distracted by something else.
>
>   (2)   The claimant being released from her job in textiles because of loss of work time and not because of difficulties with memory; in addition, no problems of memory loss were obvious in her testimony.
>
>   (3)   The claimant's use of Goody powder being sufficient to help alleviate her back pain.
>
>   (4)   The fact that the claimant had not seen a doctor regarding her memory loss, and Dr. Ruffing's indication that objective memory assessment "did not find for a memory disorder."
>
>   (5)   The claimant's use of over-the-counter medications for pain, signifying that her pain is not severe.

14

(Tr. 21-22). This court finds that the ALJ adequately evaluated the plaintiff's subjective complaints.

### *Sedentary Work*

The ALJ found that the plaintiff had the exertional capacity for sedentary work (Tr. 20) and that she could return to her past relevant work as a payroll clerk (Tr. 22). Social Security Ruling 83-10 describes sedentary work as work in which "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday." The ALJ found that the plaintiff retained the residual functional capacity to stand and walk "about two hours in a work day" and further stated that the finding was based upon the assessment of Dr. Mourtada (Tr. 20). However, as described above, Dr. Mourtada stated that the plaintiff would be able to stand and walk *less than* two hours in an eight-hour workday (Tr. 215, emphasis added), which supported the treating physician's finding that the plaintiff could stand and walk for one hour in an eight-hour workday (Tr. 209-210). Dr. Mourtada based his finding on the fact that the plaintiff had osteoarthritic changes on x-rays with joint tenderness upon palpation (Tr. 216). It appears to this court that substantial evidence does not support a finding that the plaintiff could perform sedentary work. Accordingly, upon remand, the ALJ should address this inconsistency and identify any evidence supporting his RFC findings.

### *Past Relevant Work*

At step four of the sequential evaluation process, the ALJ found that the plaintiff could perform her past relevant work as a payroll clerk (Tr. 22). "Past relevant work is work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. § 404.1560(b)(1). In this case, the plaintiff worked as a payroll clerk for a friend within the past 15 years (Tr. 242).

As a payroll clerk, she answered phones and made sure that the other workers received the parts they ordered (*id.*)  The plaintiff admits to being able to do whatever she wanted to as far as sit or stand (Tr. 243).  She also testified that the job was not a full-time position (Tr. 245).  While acting as a payroll clerk, the plaintiff also took care of her friend's ailing wife during her work hours (Tr. 246).  She would often go to the friend's house, visit with his ailing wife, relax, and watch television (Tr. 246).  Once the friend's wife died, the business shut down, which left the plaintiff without a job (Tr. 244).

In *Quint v. Barnhart*, No. 05-135-B-W, 2006 WL 549377 (D. Me. 2006), the district court considered whether a claimant's former job constituted "past relevant work." The court found:

> However, a job may not qualify as substantial gainful activity if performed under "special conditions," which include situations in which a claimant "required and received special assistance from other employees in performing [his or her] work" and in which a claimant was "allowed to work irregular hours or take frequent rest periods[.]" [20 C.F.R.] §§ 404.1573(c)(1)-(2), 416.973(c)(1)-(2); *see also, e.g., Boyes v. Secretary of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir.1994) ("If ... a claimant's impairments prevent him from doing ordinary or simple tasks satisfactorily without more supervision or assistance than is usually given other people doing similar work, it may be sufficient to show that the claimant is not working at the substantial gainful activity level.") (citation and internal quotation marks omitted); *Long v. Shalala*, No. 93-7024, 1993 WL 425430, at * *2 (10th Cir. Oct. 19, 1993) ("A step-four determination may be based on the claimant's ability to return either to a previous occupation as it is typically performed (and described in the DOT) or to a particular job. However, even the perhaps idiosyncratic duties associated with the latter must still comprise a job performed by the claimant . Because plaintiff required substantial assistance with the responsibilities of the very position he occupied, we cannot fairly characterize it as his past relevant work.") (citations omitted) (emphasis in original); *McCormick v. Barnhart*, 95 Soc. Sec. Rep. Serv. 599, 611 (N.D.Cal.2004) ("The Social Security regulations provide that an applicant's work will not be considered to be substantial gainful activity if the work is performed under special conditions that take into account the applicant's impairment. Examples of such special conditions

> include the applicant's being permitted to work at a lower standard of productivity because of family relationship and being given the opportunity to work despite the applicant's impairment because of family relationship.") (citations and internal punctuation omitted).

*Id.* at *3. In that case, the evidence showed that the job "as performed in the manner described by the [claimant] was tailored specially to her needs and was not the sort of work that constitutes substantial gainful employment." *Id.* Accordingly, the court remanded the case for continuation of the analysis at step five. *Id.* at *4.

Likewise, in this case, it appears that the plaintiff's past work was so tailored to her needs so as not to constitute vocationally relevant work. Accordingly, upon remand, the ALJ should be instructed to continue the analysis to determine whether the plaintiff was able to perform other work existing in significant numbers in the national economy.

### *Vocational Expert's Opinion*

The plaintiff's final argument is that the ALJ failed to properly consider the vocational expert's opinion. When the plaintiff filed her request for a hearing, she requested that a vocational expert be present at the hearing (Tr. 34). At the hearing, there was no vocational expert, so the plaintiff hired a vocational expert, Dr. Hecker, to evaluate her medical impairments. Dr. Hecker testified in his deposition that he reviewed all the evidence in record (Tr. 82) and answered hypothetical questions tailored to the plaintiff's impairments (Tr. 84-89). The defendant maintains that the ALJ was not required to accept the opinion of Dr. Hecker as his analysis properly ended at step four. However, as set forth above, this court finds that the analysis should not have stopped at step four. Accordingly, upon remand, the ALJ should be directed to convene a supplemental hearing for the purpose of obtaining testimony from Dr. Hecker.

**CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, this court recommends that the Commissioner's decision be reversed under sentence four of 42 U.S.C. § 405(g), with a remand of the cause to the Commissioner for further proceedings as discussed above.

                                                  s/William M. Catoe
                                                  United States Magistrate Judge

August 13, 2007

Greenville, South Carolina